IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| In re: | ) |
|  | ) |
|  | ) Case No. 23-11352-KHK |
| **SKIN LOGIC, LLC,** | ) Chapter 11 |
|  | ) |
| Debtor. | ) |
|  | ) |

**CHIEF RESTRUCTURING OFFICER'S OBJECTION
TO CONFIRMATION OF FIRST AMENDED PLAN OF
LIQUIDATION FOR SMALL BUSINESS UNDER CHAPTER 11**

Angela Shortall (the "**CRO**"), the chief restructuring officer for BNG Group LLC ("**BNG**"), by counsel, hereby objects (the "**Objection**") to confirmation of the *First Amended Plan of Liquidation for Small Business under Chapter 11* [Docket No. 96] (the "**Amended Plan**") proposed by Skin Logic, LLC (the "**Debtor**"). In support of the Objection, the CRO respectfully states as follows:

I.  **PRELIMINARY STATEMENT**

Although the Debtor takes a new tack toward liquidation, the Amended Plan continues to suffer from many of the same defects as the Debtor's initial plan of reorganization. Most glaringly, although the Debtor's proposed sale of its business as a going concern depends on the Debtor assuming the Deed of Lease (the "**Lease**") with BNG, the Amended Plan does not provide for monthly rent payments to BNG, nor does it contemplate how the Debtor will cure the Lease default or provide adequate assurance of future payment. The Debtor's plan to effect a sale over a twelve

Lawrence A. Katz (VA Bar No. 47664)
Allison P. Klena (VA Bar No. 96400)
Hirschler Fleischer, PC
1676 International Drive, Suite 1350
Tysons, Virginia 22102
Telephone: 703-584-8362
Facsimile: 703-584-8901
Email: lkatz@hirschlerlaw.com
       aklena@hirschlerlaw.com

*Counsel for the Chief Restructuring Officer*

(12) month period – during which time it appears BNG will not receive a single cent – amounts to a one-year rent abatement, to which BNG has not agreed. Because the Debtor cannot assume the Lease, the Amended Plan is not feasible, and confirmation should be denied for this and other reasons set forth below.

## II.    BACKGROUND

A.   The Lease

1.   By Deed of Lease dated February 25, 2013, the Debtor entered into the Lease to occupy the premises located at 2 Pidgeon Hill Drive, Sterling, Virginia (the "**Premises**").

2.   On October 30, 2020, BNG acquired the Premises. The Lease, as amended and assigned, is presently by and between the Debtor and BNG. True and correct copies of the Lease and its two amendments, as maintained by BNG, are attached as **Exhibit A** to the CRO's *Objection* [Docket No. 94] to the Debtor's initial plan.

3.   The Lease provides, in relevant part, that "tenant shall pay Landlord the Total Basic Rent for the Initial Term or any Additional Term thereafter, **without any deductions or set-offs**,…" Lease ¶ 4.1 (emphasis added). Likewise, paragraph 7 of the Second Amendment to Office Lease Agreement, dated March 17, 2017 states that "[a]ll Rent shall be paid to Landlord in monthly installments **without offset or deduction**. . . ." (emphasis added).

4.   The Debtor is currently in default under the Lease, both as to prepetition rent due and post-petition administrative rent due. From October 30, 2020 through the Petition Date (as defined below), total rent due under the lease was $920,429. During this period, the Debtor made two traditional lease payments totaling $53,460, leaving a prepetition balance due, without consideration of late fees and interest, of $866,969.[1] After the Petition Date, the Debtor failed to

---

[1] Throughout the prepetition period, there were substantial transfers between BNG and the Debtor which the Debtor has asserted should be included in the calculation of rent credits available to off-set rents due. BNG disputes the Debtor's calculation of the alleged rent credits.

pay any of the stub rent owed for the post-petition portion of the month of August 2023, or any portion of the rent due for September 2023 or October 2023. It was not until December 2023 that the Debtor made a partial payment of the rent due for November 2023, and, as of March 4, 2024, the Debtor has to date paid only $36,000 towards its post-petition lease obligation, leaving an outstanding post-petition rent deficiency of $133,432.26, exclusive of interest and late fees.

B. The Bankruptcy Cases

5. On August 24, 2023 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

6. Three weeks prior to the Petition Date, on August 3, 2023, Valeria V. Gunkova ("**Ms. Gunkova**"), the Debtor's principal, filed her own voluntary petition under chapter 11 of the Bankruptcy Code in this Court, commencing Case No. 23-11261-BFK (the "**Gunkova Case**").

7. Ms. Gunkova holds a 50% interest in BNG, which interest is now an asset of Ms. Gunkova's bankruptcy estate.

8. On October 26, 2024, Ms. Gunkova filed an application to employ Ms. Shortall as the chief restructuring officer of BNG [Gunkova Case, Docket No. 122], and on November 9, 2023, this Court entered an Order appointing Ms. Shortall as CRO [Gunkova Case, Docket No. 143].

9. On September 13, 2023, the Office of the United States Trustee moved for the appointment of Stephen A. Metz to serve as the chapter 11 trustee of the Debtor's bankruptcy estate [Docket No. 34], and on September 27, 2023, this Court appointed Mr. Metz as trustee and removed the Debtor as debtor in possession.

10. On November 22, 2023, the Debtor proposed its *Plan of Reorganization for Small Business Under Chapter 11* (the "**Original Plan**")[Docket No. 63]. The Original Plan contained

3

numerous defects and was on its face unconfirmable. Objections to confirmation of the Original Plan were filed by the United States Trustee, the Small Business Administration, Harry Kamin, and the CRO.

11. On March 11, 2024, the Debtor proposed its Amended Plan.

12. The Amended Plan provides for the sale of the Debtor's business as a going concern. Am. Plan, Art. 7. It states that the Debtor will operate its business and market the sale of its assets during a period of six (6) month from the Effective Date. Am. Plan, § 7.01. The Amended Plan further provides for a period of twelve (12) months from the Effective Date for the Debtor to close on a sale of its assets (the "**Sale Period**"). Am. Plan, § 7.01. To allow the Debtor to continue to operate during the Sale Period, the Amended Plan provides for the Debtor to assume the Lease. Am. Plan, § 6.01; Schedule G [Docket No. 1].

### III. ARGUMENT

A. The Amended Plan is Not Feasible.

13. Section 1191(a) of the Bankruptcy Code states that a plan under subchapter V of chapter 11 shall be confirmed "only if all of the requirements of section 1129(a), other than paragraph (15) of that section, of this title, are met."

14. Section 1129(a)(11) of the Bankruptcy Code requires the Bankruptcy Court to find that the plan is feasible as a condition precedent to confirmation. Specifically, the Bankruptcy Court must determine that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

15. The purpose of this "feasibility" requirement is "to avoid confirmation of visionary schemes which promise creditors more under a proposed plan than the debtor can possibly attain

after confirmation." *Matter of Pizza of Hawaii*, 761 F.2d 1374, 1382 (9th Cir. 1985); *see also In re DeLuca*, No. 95-11924-AM, 1996 Bankr. LEXIS 1950, at *48 (Bankr. E.D. Va. Apr. 12, 1996) ("[I]t is not necessary that success be guaranteed, but only that the plan presents a workable scheme of reorganization and operation from which there may be a reasonable expectation of success."); *In re Monnier Bros.*, 755 F.2d 1336, 1341 (8th Cir. 1985) ("[I]t is the responsibility of the court to examine the plan carefully to determine whether it is workable and has a reasonable prospect of succeeding.").

16. It is the Debtor's burden to establish the Plan's feasibility. *See In re Manchester Oaks Homeowners Ass'n*, No. 11-10179-BFK, 2014 Bankr. LEXIS 951, at *11 (Bankr. E.D. Va. Mar. 12, 2014) ("The Debtor, as plan proponent, bears the burden of proof with respect to all elements of confirmation of its Plan."); *In re Byrd Foods, Inc.*, 253 B.R. 196, 199 (Bankr. E.D. Va. 2000) ("It is well established that it is the debtor's burden to show that the plan meets the statutory criteria.").

17. While the Amended Plan is characterized by the Debtor as a liquidation plan, this is misleading, for the Amended Plan does not contemplate an expeditious sale of the Debtor's assets, but instead is predicated on the continued operations of the Debtor on the Premises for up to a year before liquidation. The Debtor's Amended Plan is not feasible because the Debtor cannot cure the Lease default and remain on the Premises during the Sale Period. Despite ostensibly relying on its ability to continue to operate on the Premises during the Sale Period, the Debtor fails to mention any means of curing the existing prepetition and post-petition defaults under the Lease or provide for the payment of future rent due under the Lease.[2] While section 6.01 of the Amended Plan provides that the Lease (identified in paragraph 2.2 of Schedule G [Docket No. 1, p. 22]) will

---

[2] To the extent the Debtor intends to rely on any rent credits described in the CRO's *Objection* [Docket No. 94] to the Debtor's initial plan, even if those rent credits were duly authorized and undisputed, the alleged credits will be exhausted as of May 1, 2024.

be assumed under the Amended Plan, the Amended Plan seemingly ignores the Bankruptcy Code's requirements for assumption. By neglecting to address the cure amounts under the Lease, the Debtor fails to demonstrate the Amended Plan's feasibility.

18. To assume the Lease, section 365(b)(1) of the Bankruptcy Code requires the Debtor to cure, or provide adequate assurance that it will promptly cure, any default under the Lease – including the Debtor's massive arrears. 11 U.S.C. § 365(b)(1); *In re R/D Intern. Technologies, Inc.*, 57 B.R. 869, 872 (Bankr. S.D. Ohio 1985). "Adequate assurance" requires a "firm commitment to make all payments and at least a reasonably demonstrable capability to do so." *In re Embers 86th Street, Inc.*, 184 B.R. 892, 900-901 (Bankr. S.D.N.Y. 1995).

19. Here, the Amended Plan does not provide for any payments to be made to BNG until the Debtor's business is sold, Am. Plan, Art. 4, § 7.02, and it makes no provision for the cure amounts that must be paid to BNG as a condition precedent to assumption of the Lease pursuant to section 365(b)(1)(A). For this reason alone, the Lease cannot be assumed, and the Amended Plan, in turn, cannot be confirmed.

20. By the same token, the Amended Plan makes no provision for the payment of post-petition rent due and owing under the Lease. The Debtor is now significantly in arrears in its obligation to pay post-petition rent. While section 1191(e) of the Bankruptcy Code could arguably allow the Debtor to spread out the payment of administrative rent claims over the term of the Amended Plan, the Debtor has not done so. The only possible reference to BNG's post-petition administrative rent claim is found in section 3.02 of the Plan, which provides that holders of allowed administrative expense claims "will be paid in full on the effective date of this Plan." But the Amended Plan does not identify the means for funding this obligation, particularly when BNG's administrative rent claim is factored in. To make matters worse, section 3.02 is contradicted by the payment schedule in section 7.02, which provides that the proceeds of a sale

will be first allocated to administrative expense claims, suggesting that BNG's claims will not be paid on the effective date of the Plan, but only at the time of sale, as much as a year later. Thus, the Amended Plan does not satisfy the requirement of section 365(b)(1)(C) of the Bankruptcy Code for lease assumption, since it fails to provide "adequate assurance of future performance under such contract or lease."

21. Based on the foregoing, particularly the Debtor's failure to provide the cure payments needed to assume the Lease, the Amended Plan does not have a reasonable prospect of succeeding and is not feasible.

B. The Plan is not Fair and Equitable to Class 3 Creditors

22. Pursuant to section 1191(b) of the Bankruptcy Code, a plan may be confirmed without the acceptance of an impaired class if the plan "does not discriminate unfairly, and is fair and equitable" with respect to a non-accepting impaired class. Here, the Debtor cannot avail itself of section 1191(b) because the Amended Plan is not fair and equitable in its treatment of BNG and the Class 3 claimants.

23. The Amended Plan's treatment of BNG is not fair and equitable. First, the Amended Plan ignores the fact that BNG's claim is partially an administrative claim. Second, while BNG's claim is deemed allowed until objected to[3], the Amended Plan provides that no payments are made to BNG or to a disputed claim reserve at any time prior to a sale of the Debtor's assets. The Debtor is granted 120 days after the Effective Date – an unreasonably long period of time – just to decide whether to file an objection. Am. Plan,§ 5.04. Then, when BNG's claim is ultimately allowed, the Amended Plan provides for no payments to be made on account of Class 3 claims until <u>all</u> claim objections are fully adjudicated. Am. Plan, § 7.02(d).

---

[3] Section 502(a) of the Bankruptcy Code states that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest,…objects."

7

24. Thus, during the 120-day objection period, and for an unlimited period of time thereafter if claim objections are filed, no payments will be made to BNG and no amounts will be used to fund a disputed claim reserve – a mechanism to protect holders of disputed claims used in virtually all plans in cases under chapter 11, including those filed under subchapter V. Such treatment cannot be deemed fair and equitable.

25. Furthermore, section 1191(c)(2)(A) of the Bankruptcy Code provides that for the Amended Plan to be found fair and equitable to a class of impaired, non-consenting creditors, it must provide that "all of the projected disposable income of the debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan." The Amended Plan is silent in this respect, and thus, the treatment of Class 3 claimants cannot be found fair and equitable under section 1191(c)(2)(A) of the Bankruptcy Code.

26. Under the Amended Plan, the Debtor is provided with a lengthy twelve (12) month Sale Period. Yet, it has very little in the way of marketable assets, given that (a) it cannot sell its leasehold interest without curing the past, present and future Lease defaults, and (b) its fixtures and leasehold improvements are not saleable under the terms of the Lease. Thus, its assertion that it needs one year to sell nothing more than used equipment and inventory to avoid a "fire-sale" discount is disingenuous; what the Debtor is actually seeking is another year of free rent at BNG's expense. Such delay constitutes yet another basis for finding the treatment of BNG's claim to be neither fair nor equitable.

C. Other Plan Deficiencies

27. The Amended Plan does not address the disposition or allocation of any profit generated by the operations of the Debtor's business during the Sale Period. To the extent that the

8

Debtor is permitted to distribute these profits to equity holders, the Amended Plan violates the priority rules of the Bankruptcy Code.

28. Section 1190(1)(B) of the Bankruptcy Code requires a subchapter V plan to include a liquidation analysis. While the Amended Plan includes a section entitled "Liquidation Analysis," it lacks any useful information of the sort contemplated by section 1190(1)(B). The Debtor must provide creditors with something more than conclusory statements to the effect that a chapter 7 liquidation will cost more and yield less. Further, the Debtor must address how creditors will be better off at the conclusion of the one-year Sale Period, when the Debtor's assets will have depreciated for an additional year and there is no guarantee that they can be sold for more than would be realized through an immediate sale by a chapter 7 trustee.

29. Section 1129(a)(9) requires that allowed administrative claims be paid in full on the Effective Date of the Amended Plan. As explained above, at least one provision of the Amended Plan provides that administrative claims will remain unpaid until the Debtor effects a sale. *See* Am. Plan, § 7.02(a). Thus, the Amended Plan does not comply with section 1129(a)(9).

30. Section 1141(d)(3) provides that confirmation of a plan of liquidation where the debtor does not engage in any business after consummation of the plan does not result in a discharge. By shifting the burden to creditors to assert an "articulable good faith basis" why the Debtor is *not* entitled to a discharge, the Amended Plan contravenes section 1143(d)(3).

31. The CRO reserves the right to supplement this Objection with additional bases for non-confirmation of the Plan.

### IV.    CONCLUSION

WHEREFORE, for all the foregoing reasons, the CRO respectfully requests that this Court enter an Order denying confirmation of the Plan and granting such other and further relief as this Court may deem just and proper.

Dated: April 18, 2024                    Respectfully submitted


*/s/ Lawrence A. Katz*
Lawrence A. Katz (VA Bar No. 47664)
Allison P. Klena (VA Bar No. 96400)
Hirschler Fleischer, PC
1676 International Drive, Suite 1350
Tysons, VA 22102
Telephone:  703-584-8362
Facsimile:  703-584-8901
Email:  lkatz@hirschlerlaw.com
         aklena@hirschlerlaw.com

*Counsel for Chief Restructuring Officer*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of April, 2024, a true and correct copy of the foregoing *Chief Restructuring Officer's Objection to Confirmation of First Amended Plan of Liquidation for Small Business Under Chapter 11* was served on all parties receiving CM/ECF notices in this case, and by U.S. Mail, first class, postage prepaid, on and on each of the parties on the attached Mailing List.

                                            */s/ Lawrence A. Katz*
                                            Lawrence A. Katz

# MAILING LIST

American Express
P.O. Box 650448
Dallas, TX 75265-0448

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern, PA 19355-0701

BNG Group, LLC
2 Pidgeon Hill Dr. Ste. 110
Sterling, VA 20165-6129

Bethune Benes, PLLC
c/o Bethany Benes, Esq.
3975 Fair Ridge Drive, South Bldg
Suite 246
Fairfax, VA 22033-2911

Cadence Bank
1068 E Alameda Dr
Houston, TX 77075

Cadence Bank
c/o The Stark Firm|
3017 Bolling Way NE
Atlanta, GA 30305-2205

Cameron/ McEvoy
4100 Monument Corner Drive
Suite 420
Fairfax, VA 22030-8610

Capital One
PO Box 71087
Charlotte, NC 28272-1087

Capital One N.A. by American InfoSource as agent
4515 N Santa Fe Ave
Oklahoma City, OK 73118-7901

Citi
P.O. BOX 9001037
Louisville, KY 40290-1037

Discover
PO Box 6103
Carol Stream, IL 60197-6103

Discover Bank
P.O. Box 3025
New Albany, Oh 43054-3025

IRS
Special Procedures Support Staff
P. O. Box 10025
Richmond, VA 23240

Internal Revenue Service
P O box 7346
Philadelphia, PA 19101-7346

Lexus Financial Services
5005 N River Blvd NE
Cedar Rapids, IA 52411-6634

SBA
409 3rd Street, SW
Washington, DC 20416-0005

Skin Logic, LLC
2 Pidgeon Hill Dr. Ste. 110
Sterling, VA 20165-6129

State Farm
US Bank
P O Box 790408
St Louis, MO 63179-0408

Sterling Investment, LLC
2 Pidgeon Hill Dr. Ste. 110
Sterling, VA 20165-6129

TD Bank
PO Box 100114
Columbia, SC 29202-3114

TD Bank, N.A.
PO BOX 1931
Burlingame, CA 94011-1931

The Law Office of Jay M. McDannell PLLC
10617 Jones St, #301A
Fairfax, VA 22030-7505

Toyota Motor Credit Corporation
PO Box 9013
Addison, Texas 75001-9013

US BANK
PO BOX 5229
CINCINNATI OH 45201-5229

| | |
|---|---|
| VNJ Management | Verizon by American InfoSource as agent |
| 2 Pidgeon Hill Drive Suite 110 | 4515 N Santa Fe Ave |
| Sterling, VA 20165-6129 | Oklahoma City, OK 73118-7901 |

17119044.2  049116.00001