Stephen A. Metz (89738)
Offit Kurman, P.A.
7501 Wisconsin Avenue, Suite 1000W
Bethesda, MD 20814
(240) 507-1723
smetz@offitkurman.com
Subchapter V Trustee

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| IN RE: ) | |
| ) | |
| **SKIN LOGIC, LLC** ) | |
| ) | **Case No. 23-11352-KHK** |
| ) | **Chapter 11** |
| **Debtor** ) | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### SUBCHAPTER V TRUSTEE'S MOTION
### (A) FOR ORDER ESTABLISHING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS; AND (B) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND DETERMINING CURE AMOUNTS

Stephen A. Metz, Subchapter V trustee (the "Trustee") for Skin Logic, LLD (the "Debtor"), hereby moves this Court for entry of an order establishing bidding procedures in connection with the sale of substantially all of the Debtor's assets and approving procedures for the assumption and assignment of contracts and determining cure amounts (the "Motion"). In further support of this Motion, the Trustee alleges as follows:

### Background

1.  On August 24, 2023 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11, Subchapter V, of the Bankruptcy Code initiating this case.

2. On September 27, 2023, the Court entered an Order Granting the Acting United States Trustee's Motion to Remove Debtor as Debtor in Possession and to Appoint Subchapter V Trustee as Operating Trustee Pursuant to 11 U.S.C. § 1185(a).

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are § 105 and §363 of the Bankruptcy Code.

### The Debtors and Its Business Operations

4. The Debtor is a Virginia corporation with its principal place of business at 2 Pidgeon Hill Drive, Sterling, Virginia 20165. The Debtor trades as Aria Medi Spa, operating a premiere day spa. The Debtor provides services ranging from advanced laser treatments to yoga classes, all the while furnishing a topnotch massage therapy menu in a relaxed and inviting environment.

5. Prior to the Petition Date, the Debtor began marketing its assets for sale. Prior to the Petition Date, the Debtor worked with a broker, Mark Irion of Transworld Business Advisors of Richmond VA ("Transworld"). On December 28, 2023, the Trustee filed an Application for Authority to Employ Mark Irion and Transworld Business Advisors of Richmond VA as Broker to the Estate (the "Application to Employ Transworld"). On January 2, 2024, the Court entered an Order granting the Application to Employ Transworld.

6. Transworld identified several potential purchasers of the Debtor's assets, and the Trustee met with and communicated with multiple potential purchasers.

7. The Trustee has determined in his business judgment that the most likely highest recovery for creditors will be through the sale of substantially all of Debtor's assets.

8.      As of the filing of this Motion, the highest and best offer was submitted by Harpreet Singh ("Purchaser").  Other potential purchasers expressed an interest in purchasing the Debtor's assets but were not prepared to enter into a contract to purchase the assets.  However, they may bid on the assets in the event of an auction.

9.      After many discussions, the Trustee and Purchaser entered into an agreement in principle, subject to entering into a formal written Asset Purchase Agreement (the "Agreement"). Pursuant to the Agreement, the Purchaser will purchase substantially all of the Debtor's assets, subject to Court approval.

10.     Contemporaneously with the filing of this Motion, the Trustee has filed a Motion for Order authorizing the sale of substantially all of Debtor's assets (the "Asset Sale").

## **RELIEF REQUESTED**
### Bidding Procedures

11.     This Motion seeks the entry of an order (the "Bid Order") approving the Bidding and Auction Procedures for the Asset Sale. The Bidding and Auction Procedures are in the best interests of the Debtor's estate and creditors because such procedures will ensure the Trustee receives the maximum possible value for the Asset Sale.

12.     Under the Agreement, Purchaser shall purchase substantially all of the Debtor's assets for $2,000,000.00 (the "Purchase Price"). Among others, the Trustee shall retain cash, deposits, corporate minute books, stock transfer records, and internal corporate communications (including but not limited to emails) and any claims, or causes of action under the Bankruptcy Code or applicable non-bankruptcy law, including but not limited to actions arising under or in connection with Chapter 5 of the Bankruptcy Code, avoidance actions, preference actions, fraudulent conveyance actions, and actions to recover improper post-petition transfers.

13. Under the Agreement, the Purchaser is to receive a break-up fee in the amount of $44,000.00, subject to Court approval, from the proceeds of sale if another party is the ultimate successful purchaser. Purchaser's offer is subject to approval of the Court and to any higher and better offer(s) that may be made in accordance with the Bidding and Auction Procedures. At a minimum, the determination as to whether an offer is a higher and better offer is expressly conditioned on that offer meeting the incremental monetary requirements set forth in the Bidding and Auction Procedures. If any higher and/or better offer(s) are received in compliance with the Bidding and Auction Procedures, the Trustee will request authority to consummate the Asset Sale with the offeror who submits such offer. This process will maximize the potential return to the Debtor's estate, whether the ultimate purchaser is Purchaser or some other bidder.

14. In an effort to ensure the Trustee obtains the maximum value for the Asset Sale, the Trustee is requesting by this Motion that the Court approve the Bidding and Auction Procedures, including the following:

(a) Approval of an overbid amount in the amount of at least $20,000.00 over and above the Purchase Price, plus the amount of the break-up fee approved by this Court, and thereafter incremental bid amounts of $20,000.00;

(b) Setting an auction sale of the Debtor's assets on July 29, 2024 at 1:00 P.M. (the "Auction Sale") to be held at the Trustee's office at 7501 Wisconsin Avenue, Suite 1000W, Bethesda, MD 20814; and

(c) Setting a hearing on the approval of the Asset Sale on July 30, 2024 at 12:00 P.M. (the "Sale Hearing").

15. If additional qualifying offers are received pursuant to those Bidding and Auction Procedures, the Trustee shall conduct an auction on the time and date set forth above (the

"Auction"). If no qualifying offers are received pursuant to the Bidding and Auction Procedures, there will be no Auction. The Trustee (subject to this Court's approval) will accept only "Qualifying Offers" at the Auction. A Qualifying Offer is one that satisfies all of the following requirements:

(a) All bids for the Asset Sale shall be in the form of a signed asset purchase agreement substantially in the form to be submitted by Purchaser (the "Bid") to the Trustee via Email at smetz@offitkurman.com, by 2:00 p.m. Eastern Standard Time on the date that is five (5) business days before the Auction Sale (the "Bid Date"); and

(b) Any Bid(s) shall be irrevocable until the conclusion of the Auction and shall:

(i) contain a description of the bidder(s)' business;

(ii) include such prospective bidder(s)' financial statements for the preceding two years or other evidence of financial ability sufficient to consummate a sale;

(iii) such Bid (a) at a minimum, provides for consideration of at least $20,000.00 over and above the Purchase Price, plus the amount of any break-up fee to Purchaser approved by this Court, (b) provides for the payment in cash at the Closing, (c) is not conditioned on the outcome of due diligence by the bidder(s) with respect to the Debtor's assets that is not completed by the time of the Auction, and (d) is not conditioned on the bidder(s)' ability to obtain financing; and

(iv) be accompanied by a good faith deposit of $200,000.00 (the "Earnest Money Deposit") by certified or cashier's check payable to Stephen A. Metz, Trustee for Skin Logic, or via wire transfer to the Trustee (who shall provide wire instructions upon request), which deposit shall be subject to the jurisdiction of the Bankruptcy Court and shall (a)

be retained by the Trustee in the event the bidder(s) submit(s) the Accepted Offer(s) as defined below, which is approved by the Bankruptcy Court, but fails to consummate sale, or (b) be returned to such bidder(s) in the event the Bid(s) is not the Accepted Offer(s), or is not approved by the Bankruptcy Court.

16. The following terms and conditions shall (subject to Court approval) govern the conduct of the Auction Sale:

(a) Upon receipt of any Bid(s) that satisfy(ies), in the sole opinion of the Trustee, the required terms and conditions set forth in the preceding paragraphs, the Trustee may communicate with such bidder(s) before the Auction, and such alternative bidder(s) shall provide to the Trustee on the next business day after the Trustee requests therefor, any information reasonably required by the Trustee in connection with the Trustee's evaluation of such Qualifying Offer(s);

(b) Prior to the Auction, the Trustee will evaluate any Qualifying Offer(s) he has received with respect to Asset Sale and will select the highest and/or best offer(s) for the Asset Sale from among such offers (the "Opening Offer(s)"). At a minimum, the determination as to whether an offer is a highest and best offer is expressly conditioned on that offer meeting the incremental monetary requirements set forth in the Bidding and Auction Procedures. In considering any Qualifying Offer(s), the Trustee shall consider the value thereof to the Debtor's estate including cash. If multiple bids in the same amount for the Asset Sale are received, the Trustee shall designate the order of bidding at the Auction;

(c) Only those prospective bidders who have satisfied the conditions described above may participate in the Auction. All bidders shall appear at such Auction in person, or through a duly authorized representative. Before the commencement of the Auction,

6

each bidder or its representative shall be required to provide the Trustee with proof satisfactory to the Trustee that such bidder or representative is legally empowered, by power of attorney or otherwise, and financially capable to (a) bid on behalf of the prospective bidder(s), and (b) complete and sign, on behalf of the bidder(s), a binding and enforceable purchase agreement to acquire the Debtor's assets, and to perform its obligations with respect thereto;

(d)    All bidders shall be deemed to have submitted to the exclusive jurisdiction of the Bankruptcy Court with respect to all matters related to the Auction;

(e)    All Bids shall be "firm offers" and shall not contain any contingencies as to the validity, effectiveness and/or binding nature of the bid, including, without limitation, contingencies for financing, due diligence or inspection;

(f)    If multiple bids satisfying all Auction requirements are received, each party shall have the right to continue to improve its bid at the Auction;

(g)    Within one business day following Bankruptcy Court approval of the Asset Sale, the entity(ies) that make(s) the highest and best bid for each of the Debtor's assets (the "Accepted Offer(s)"), shall complete and sign all agreement(s), contract(s), instrument(s) or other document(s) evidencing and containing the terms and conditions upon which such Accepted Offer was made;

(h)    Subject to Bankruptcy Court approval following the Auction, the entity(ies) that make(s) the Accepted Offer shall be sold the Debtor's assets, pursuant to an Order entered by the Court and an executed asset purchase agreement(s) substantially in the form of Purchaser's asset purchase agreement; and

(i)    Notwithstanding anything contained herein to the contrary, if for any reason the entity(ies) that make(s) the Accepted Offer fail(s) to consummate the purchase of the

7

Debtor's assets on the date determined by the Trustee and such bidder, the bidder with the next highest and best bid will automatically be deemed to have submitted the Accepted Offer, to the extent the Trustee consents, the Trustee and such bidder are authorized to effect the transaction contemplated herein as soon as is commercially reasonable. In such event, the Trustee will submit a proposed order to the Bankruptcy Court. If there are no objections to the sale within five (5) days of such service by the Trustee, the Bankruptcy Court will enter an order approving the next highest and best bidder without further notice or hearing. In such event, the Trustee specifically reserves the right to seek all available damages from the defaulting bidder(s), including, without limitation, retention of the Earnest Money Deposit(s).

17. Any objections to entry of an order approving the Asset Sale must be in writing and be filed with the United States Bankruptcy Court for the Eastern District of Virginia (and served upon the Trustee, no later than **4:00 p.m. Eastern Time on the date that is three (3) business days before the Auction Sale**. The Trustee further requests, pursuant to Fed. R. Bankr. P. 9014, that the Court order that the failure of any competing bidder and/or objecting person or entity to timely file and serve an objection in accordance with the requirements of the Procedures Order will be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the consummation and performance of the Agreement, including the transactions contemplated thereby, if authorized by the Court.

18. The Bidding Procedures set forth herein are fair and reasonable and in the best interest of the Debtor's estate and creditors.

Assumption and Assignment of Contracts

19. The Trustee is also seeking approval of certain procedures to facilitate the fair and orderly assumption and assignment of certain contracts and leases (together, the "Assumed

8

Contracts/Leases") in connection with the Sale (the "Assumption Procedures"). Because the Assumption Procedures are set forth in detail in the attached Bidding Procedures Order, they are not restated herein. Generally speaking, however, the Assumption Procedures (a) outline the process by which the Debtors will serve notice to all counterparties to the Assumed Contracts/Leases regarding the proposed assumption and assignment and related cure amounts, if any, informing such parties of their right and the procedures to object thereto, and (b) establish objection and other relevant deadlines and the manner for resolving disputes relating to assumption and assignment of Assumed Contracts/Leases to the extent necessary.

20. In connection with the assumption and assignment of the Assumed Contracts/Leases, the Trustee believes it is necessary to establish a process by which (a) the Trustee and counterparties to Assumed Contracts/Leases can reconcile cure obligations, if any, in accordance with section 365 of the Bankruptcy Code, and (b) such counterparties can object to the assumption and assignment of Assumed Contracts/Leases and/or related cure amounts.

21. As set forth in the Bidding Procedures Order, the Trustee also requests that any party that fails to object to the proposed assumption and assignment of any Assumed Contract/Lease be deemed to consent to (a) the assumption and assignment of the applicable Assumed Contract/Lease pursuant to section 365 of the Bankruptcy Code on the terms set forth in the Sale Order and (b) assignment notwithstanding any anti-alienation provision or other restriction on assignment. *See, e.g., Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to sale motion, creditor deemed to consent); *Pelican Homestead v. Wooten (In re Gabel)*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same).

9

22. The Trustee believes that the Assumption Procedures are fair and reasonable, provide sufficient notice to parties to the Assumed Contracts/Leases and provide certainty to all parties in interest regarding their obligations and rights in respect thereof. Accordingly, the Trustee requests the Court approve the Assumption Procedures set forth in the Bidding Procedures Order.

23. Granting this Motion is consistent with the policies of the Bankruptcy Code and is authorized by §§ 105 363 and 365.

## Argument

24. Section 363(b) of the Bankruptcy Code provides that a trustee "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." *See In re Ames Dept. Stores, Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992) (noting that "going-out-of-business" sales are governed by § 363(b)). To obtain court approval to use property under § 363(b) of the Bankruptcy Code for the purpose of a sale, the Trustee need only show a legitimate business justification for the proposed action. *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 993 F.2d 513, 515 (7th Cir. 1991)); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (7th Cir. 1983) (same).

25. The Trustee believes that he must conduct the Auction and Asset Sale which is in the best interests of creditors and provides the most efficient mechanism to maximize their value in light of the current market conditions.

26. The Trustee proposes to provide a break-up fee in the amount of $44,000.00. Courts in the Fourth Circuit and elsewhere have determined that break-up fees and expense reimbursements constitute administrative expenses, and therefore, the payment of such fees must

10

provide a post-petition benefit to the bankruptcy estate. *See, e.g.*, *In re Tropea*, 352 B.R. 766 (Bankr. N.D.W.V. 2006) (granting administrative expense claim to unsuccessful stalking horse bidder, even in the absence of a contractual break-up fee, when the stalking horse bidder advanced funds to initiate a bid process that created greater value for the estate). *See also In re O'Brien Environmental Energy, Inc.)*, 181 F.3d 527, 537 (3d Cir. 1999) (recognizing that the break-up fee at issue "promoted more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited").

27. Here, the proposed break-up fee (which is 2.2% of the proposed purchase price of $2,000,000.00) is reasonably designed to compensate Purchaser for its expenses while not discouraging competitive bidding. Purchaser has conducted due diligence, has negotiated with the Trustee and Debtor's landlord and will incur legal fees in conjunction with the preparation and negotiation of an Asset Purchase Agreement. Given these expenses, as well as the fact that Purchaser is serving as a stalking horse to purchase the assets, it is appropriate that Purchaser be compensated if the assets are sold to another bidder.

**WHEREFORE**, the Trustee respectfully request that this Court enter an order establishing bidding procedures and assumption/assignment procedures substantially similar to those set forth in the attached proposed order, and granting such other and further relief as is just and proper.

Respectfully submitted,

**OFFIT KURMAN, P.A.**

By: /s/ Stephen A. Metz
Stephen A. Metz, Esq. (Bar. No. 89738)
7501 Wisconsin Avenue, Suite 1000W
Bethesda, Maryland 20814
TEL: (240) 507-1723
FAX: (240) 507-1735
Email: smetz@offitkurman.com

*Subchapter V Trustee*

Dated: May 13, 2024

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of May, 2024, a copy of this Motion and Proposed Order was served via CM/ECF on all registered ECF participants who have appeared in this case, and on May 14, 2024, this Motion will be mailed via first class mail, postage prepaid, to all creditors and parties in interest on the Court's matrix.

/s/ Stephen A. Metz
Stephen A. Metz

4853-3177-4141, v. 1